**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>APACENTREPRENEUR.COM;<br>THEGULFENTREPRENEUR.COM;<br>AND<br>THEGULFENTREPRENEURS.COM<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-1913<br><br><br>**Complaint For:**<br><br>**(1)    VIOLATION OF THE ACPA<br>        (15 U.S.C. § 1125(d)(2)(A))** |

**COMPLAINT**

Plaintiff Entrepreneur Media, LLC ("Plaintiff" or "EM") alleges, with knowledge concerning its own acts and on information and belief as to all other matters (unless otherwise specifically stated), as follows in support of its *in rem* Complaint for cybersquatting against the APACENTREPRENEUR.com, THEGULFENTREPRENEUR.com, and THEGULFENTREPRENEURS.com domain names (together, the "Abusive Domain Names"):

**NATURE OF THE ACTION**

This is an *in rem* action asserted under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(2)(A) ("ACPA"), against the Abusive Domain Names. A single registrant (the "Registrant") has maliciously used the Abusive Domain Names in violation of EM's trademark rights to unlawfully, and in bad faith, derive a profit by misleading members of the public.

In the communications that EM is aware of, Registrant has used the Abusive Domain Names to contact members of the public in attempts to collect payment for coverage in Registrant's knock-off and impersonation magazine and online publications.

By registering and using the Abusive Domain Names and impersonating EM, Registrant has not only attempted to mislead EM's consumers and other members of the public, but has also

1

violated and harmed EM's longstanding trademark rights and damaged EM's outstanding reputation and goodwill.  This conduct constitutes cyberpiracy in violation of the ACPA, and EM accordingly seeks an order transferring the Abusive Domain Names to EM to halt this unlawful impersonation and infringement.

## PARTIES

1.     Plaintiff Entrepreneur Media, LLC ("Plaintiff" or "EM") is a Delaware limited liability company with its principal place of business at 1651 East 4th Street, #125, Santa Ana, California 92701.

2.     The *res* are the domain names identified as the "Abusive Domain Names." APACENTREPRENEUR.com was registered on August 28, 2019. THEGULFENTREPRENEUR.com was registered on June 23, 2020. THEGULFENTREPRENEURS.com was registered on February 19, 2020.

3.     APACENTREPRENEUR.com is a domain name that, according to DomainTools.com's Whois service, is registered to an unidentified person using Domains by Proxy, LLC's privacy services to conceal their identity and location.  A copy of the domain name registration record for APACENTREPRENEUR.com is attached as Exhibit 1.   The APACENTREPRENEUR.com domain name includes the "APAC" term, which is a geographic shorthand for Asia-Pacific.  The APACENTREPRENEUR.com domain name also includes the "entrepreneur" term, which is EM's legitimate business name and registered trademark.

4.     THEGULFENTREPRENEUR.com is likewise a domain name that, according to DomainTools.com's Whois service, is registered to an unidentified person using Domains by Proxy, LLC's privacy services to conceal their identity and location.  A copy of the domain name registration record for THEGULFENTREPRENEUR.com is attached as Exhibit 2.  The domain name THEGULFENTREPRENEUR.com includes the "GULF" term, which is a geographic shorthand for the Gulf regions of the United Arab Emirates, Saudi Arabia, Qatar, and other countries.  The domain name THEGULFENTREPRENEUR.com also includes the "entrepreneur" term, which is EM's legitimate business name and registered trademark.

5. THEGULFENTREPRENEURS.com is also a domain name that, according to DomainTools.com's Whois service, is registered to an unidentified person using Privacy Protect, LLC's privacy services to conceal their identity and location. A copy of the domain name registration record for THEGULFENTREPRENEURS.com is attached as Exhibit 3. The domain name THEGULFENTREPRENEURS.com includes the "GULF" term, which is a geographic shorthand for the Gulf regions of the UAE, Saudi Arabia, Qatar, and other countries. The domain name THEGULFENTREPRENEUR.com also includes the "entrepreneur" term, which is EM's legitimate business name and registered trademark.

6. In exchange for a fee, Domains by Proxy, LLC and Privacy Protect, LLC publish their respective contact information on the public WHOIS database so that the true owner of the Abusive Domain Names may avoid disclosing their personal identifying information.

7. The Abusive Domain Names were registered across two different registrars.

8. The registrar for the APACENTREPRENEUR.com and THEGULFENTREPRENEUR.com domain names is GoDaddy.com, LLC ("GoDaddy"), which, on information and belief, maintains its principal place of business at 100 S Mill Ave. #1600, Tempe, Arizona 85281.

9. The registrar for the THEGULFENTREPRENEURS.com domain name is Hostinger Operations, UAB ("Hostinger"), which, on information and belief, maintains its principal place of business at Švitrigailos str. 34, Vilnius 03230 Lithuania.

10. VeriSign Global Registry Services ("VeriSign") is the domain name registry of the Abusive Domain Names, and its principal place of business is located in this judicial district at 12061 Bluemont Way, Reston, Virginia 20190.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

12. This Court has *in rem* jurisdiction over the Abusive Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(I) because EM cannot obtain *in personam* jurisdiction over Registrant.

3

On information and belief, Registrant is located outside of the United States and is not subject to personal jurisdiction.  *In rem* jurisdiction is proper in this District pursuant to 15 U.S.C. § 1125(d)(2)(C)(i) because the domain name registry, VeriSign, is located in this District.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and 15 U.S.C. §§ 1125(d)(2)(A) and (C) because the Abusive Domain Names are all .COM domains, and the domain name registry of the .COM top level domain (VeriSign) is located in this District.  *See Blackrock, Inc. v. Balckrock.Com*, 2022 U.S. Dist. LEXIS 226754, at *11-12 (E.D. Va. Nov. 18, 2022) ("Verisign, Inc. . . . is the registry operator for the .COM and .NET top level domain names, and VeriSign is located in this judicial district.").  Copies of the domain name registrations for each of the Abusive Domain Names as of October 29, 2025 are attached as Exhibits 1-3.

## FACTUAL BACKGROUND

### EM and Its Successful ENTREPRENEUR® Brand

14.     For over forty years, EM (together with its predecessor companies) has published magazines and books that provide editorial content and other information, as well as offered products and services related, or of interest, to businesses, business owners, and prospective business owners.

15.     EM's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

16.     EM is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR name in their titles.  ENTREPRENEUR® magazine is published six times per year with a current print and digital paid circulation, including both subscriptions and single-copy sales, of more than 400,000 copies in the United States and worldwide with over 3 million magazine readers.

4

17.     ENTREPRENEUR® magazine routinely features articles about and interviews with some of the biggest names in the business and entertainment community, as shown here:

  

18.     ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EM's proprietary formula:



19.     EM also publishes and distributes in the United States and worldwide over 120 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR PRESS® imprint, and with over 2.5 million books sold, including translations in multiple languages throughout the world:



20.     EM also conducts seminars, webinars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses.  In one such program, EM has created, and for the last several years offered and sponsored, an exclusive online subscription program under the ENTREPRENEUR LEADERSHIP NETWORK® brand, whereby selected industry experts provide their advice, ideas, and other content to help educate EM's millions of website visitors—including both existing and aspiring business owners and entrepreneurs.  Over the years, EM has also sponsored events, which have included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference sponsored by Canon USA, and (iii) the *Entrepreneur 360™*, a conference sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and American Airlines.

21.     In addition to the *entrepreneur.com* website that it has owned and operated continuously since 2002, EM also disseminates and markets its content and services through its mobile apps, as well as its various social media channels on such platforms as Facebook®, YouTube®, Instagram®, and LinkedIn®, and with a total of over 16 million followers.

22.     The website at *entrepreneur.com* has recently averaged more than 2.9 million unique users and more than 4.6 million page views per month, with over 6 million unique visitors across all of EM's digital platforms.

23.    EM has also launched apps for iPhones/iPads and Android devices:



24.    EM produces and offers a variety of podcasts, made available on its website at *entrepreneur.com*, and also distributed under the ENTREPRENEUR Mark on Spotify and Apple Podcast as well as other outlets:



25.    EM's reputation and high-quality content and services have resulted in numerous co-branding relationships with some of the top names in news and business.  These co-branding relationships include: (i) annual rankings of top undergraduate and graduate colleges for entrepreneurship by The Princeton Review; (ii) webinars on topics such as leadership, starting and running a business, and marketing and social media, sponsored by well-known companies like Comcast Business and Oracle NetSuite® ; and (iii) videos presented by business leaders, such as the co-founder of Netflix® and the president and owner of In-N-Out Burger.  EM's past co-branding relationships have included: (i) contests sponsored by General Motors and Canon USA; (ii) content provided and branded by CNBC, Reuters, NFL Players Association, and Business Insider; and (iii) Great Place to Work® (annual Best Small & Medium Workplaces rankings).

26.     Most recently, EM has partnered with Yelp® to create AMERICA'S FAVORITE MOM & POP SHOPS®, an annual listing and ranking of 150 of America's most popular independently owned and operated small businesses throughout the United States.  EM has also partnered with Yelp® since 2020 to create a series of podcasts entitled *Behind the Review*, featuring conversations with business owners and reviewers about how small businesses can best respond to the needs and expectations of their customers.  In addition, EM has: (i) partnered with Steve Case's *Rise of the Rest*™, a nationwide program to promote entrepreneurship in start-up ecosystems in middle America; (ii) hosted a contest with Canon USA under the rubric *Project Grow Challenge*, in which businesses were awarded money based on how they proposed to grow their businesses through increased productivity and consumer awareness; and (iii) partnered with Chivas Brothers Limited as its exclusive media content partner, in connection with and support of Chivas' annual event known as *The Venture*, a worldwide competition to discover, celebrate, and award with investment dollars extraordinary startup businesses creating positive social change.

27.     Through careful cultivation of its various products and services, EM has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.

28.     EM has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR Mark.  Through EM's widespread and continuous use of the ENTREPRENEUR Mark, it has acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EM.

29.     The fame and quality of the products and services bearing the ENTREPRENEUR Mark have been widely recognized through industry awards and commendations.  For example, *ENTREPRENEUR*® magazine was rated #1 among the top twelve "Most Relevant Business Magazines for Entrepreneurs in 2023" by Altar.io, and was a finalist in two categories in the 2018 Folio Digital Awards for "Best Website Relaunch" and "Best User Experience."  Additionally, two of EM's editor-led podcasts recently earned recognition:  the "Problem Solvers" podcast series

earned the 2018 Digiday Publishing Award for "Best Use of a Podcast," and the "How Success Happens" podcast series was a finalist in the 2018 Folio Digital Awards. EM was also honored as a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious *Maggie* award in 2008, 2009, 2010, and 2011 from the Western Publishing Association. EM's website at *entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com. EM has also received multiple Integrated Marketing Awards from min for its magazine and website, including recognition as an awards finalist in 2015.

30.    In addition, both ENTREPRENEUR® magazine and the *entrepreneur.com* website were named to BtoB magazine's 2010, 2011, and 2012 lists of the top 50 media outlets for business-to-business advertising. EM's management and staff have also been recognized for their contributions to publishing and the media industry. In 2015, for example, Folio designated an EM staff writer as one of the "Top Women in Media," and Fast Company named EM's Editor-in-Chief one of the "25 Smartest Women in Media."

<strong><u>EM's Intellectual Property Rights</u></strong>

31.    EM owns, and has obtained United States federal registrations for, the ENTREPRENEUR® Mark, as well as a family of related marks incorporating the term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS: GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16: Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968 August 25, 1987 |

9

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises 41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting work shops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032 October 30, 2001 |
| ENTREPRENEUR | 38:  Streaming of video and digital material on the Internet | 4,260,948 December 18, 2012 |
| ENTREPRENEUR | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424 June 4, 2013 |
| ENTREPRENEUR | 9: Pre-recorded audio and audiovisual recordings of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, in the form of downloadable recordings 38: Streaming of audiovisual and multimedia content via the internet; transmission and delivery of audiovisual and multimedia content via the internet; video-on-demand transmission services; mobile media services in the nature of electronic transmission, wireless broadcasting and electronic delivery of audio, video and multimedia entertainment content, namely, text, data, images, audio, video, and audiovisual files provided via the | 5,256,907 August 1, 2017 |

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | internet; video broadcasting services over the internet or other communications network, namely, electronically transmitting video clips; internet broadcasting services; providing streaming of audio and video in the nature of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, namely, audio, visual, and audiovisual matter for others via global computer networks; broadcasting and transmission of radio, and internet programs; broadcasting of internet programs via radio and television; broadcasting of programs provided over the internet; streaming audio, video, and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks; providing video on-demand transmission of audio, video and audiovisual content, data and information; transmission of audio, video and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks. 41: Entertainment services, namely, the production, presentation, distribution and syndication of on-going television, internet and non-downloadable audio and audiovisual recordings, all of the aforementioned concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business | |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937 September 30, 2014 |
| ENTREPRENEUR PRESS | 16:  Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice | 3,470,064 July 22, 2008 |

11

US-DOCS\161109688.3

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | and information relating to the subjects of starting, running, and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | |
| Ep Entrepreneur Press | 16:  Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |
| ENTREPRENEUR'S STARTUPS | 16:  Paper goods and printed matter; namely, magazines, pertaining to business opportunities | 3,204,899 February 6, 2007 |
| ENTREPRENEUR VOICES | 9: Downloadable digital books in the nature of e-books, namely, a downloadable series of non-fiction e-books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, including inspirational stories and timeless advice<br>16: Paper goods and printed matter, namely, a series of non-fiction books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, and inspirational stories and timeless advice | 5,854,545 September 10, 2019 |

32.     The above marks are collectively referred to as the "EM Marks."  The above registrations are collectively referred to as the "EM Registrations."

12

33.    EM's    four    U.S.    registrations    for    the    ENTREPRENEUR    Mark (Nos. 1,453,968; 2,263,883; 2,502,032; 4,260,948; 4,345,424) and several other of the foregoing registrations are incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EM's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

34.    Further, the EM Registrations constitute prima facie evidence that the EM Marks are valid, and that EM is entitled to the exclusive use of the EM Marks in commerce throughout the United States on the goods and services listed in the registrations.

35.    EM and its predecessors in interest have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the EM Marks, and in particular under the ENTREPRENEUR Mark.  In fact, EM has used the ENTREPRENEUR Mark in commerce for over forty years, having first adopted that mark for magazines at least as early as May 2, 1978.  Accordingly, that mark is famous, well-known, and recognized as identifying goods and services that originate from EM.

36.    Through careful cultivation of its goods and services provided under the EM Marks, and in particular the ENTREPRENEUR Mark, EM has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.  Through EM's widespread and continuous use of its family of EM Marks, these marks have acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EM.

37.    Additionally, EM has developed strong common law trademark rights to the E Logo.  Indeed, through EM's widespread and continuous use of its E Logo, the logo has acquired extensive goodwill, developed a high degree of distinctiveness, and become well-known and recognized as identifying goods and services that originate from EM.

38.     Numerous courts across the country have recognized the strength of the EM Marks. For example:[1]

i.      Both a Magistrate Judge and District Court Judge in the Eastern District of Virginia found the ENTREPRENEUR Mark to be distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*, No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011) (also finding that EM's rights were violated by the registration of the *seattleentrepreneur.com* and *austinentrepreneur.com* domain names).

ii.     The U.S. District Court for the Central District of California held that "[t]he extensive advertising and public recognition over the past 25 years have established [the ENTREPRENEUR® Mark] as a strong mark in the industry"; the ENTREPRENEUR® Mark "is a strong distinctive mark, deserving of significant protection"; and the ENTREPRENEUR Mark "has acquired secondary meaning." *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist. Lexis 24078, *9–10, 13 (C.D. Cal. June 23, 2004).

iii.    The Ninth Circuit reviewed the District Court's findings and affirmed them on appeal. *Entrepreneur Media, Inc. v. Smith*, 101 Fed. App'x 212, 215 (9th Cir. 2004).

iv.     The U.S. District Court for the Central District of California in a later case adopted the holding of the district court in the Smith case, and once again found that "the mark ENTREPRENEUR is strong distinctive mark, deserving of significant protection" and that "EMI's ENTREPRENEUR mark is a strong mark" that was infringed by defendant's ENTREPRENEUR PODCAST mark. *See Entrepreneur Media, Inc. v. Eric M. Dye, et al.*, No. 18-cv-0341-DOC (PLAx), Docket No. 22 (C.D. Cal., Sept. 11, 2018).

---

[1] Some of the cases cited mention "Entrepreneur Media, Inc." or "EMI." These refer to EM, as Entrepreneur Media, Inc. is EM's predecessor in interest.

v.  The U.S. District Court for the Central District of California recently held that "the EMI Marks, including the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI such that they are deserving of strong protection." *See Entrepreneur Media, Inc. v. Alfonso*, No. 8:21-cv-00644-DOC-(JDEx), 2021 U.S. Dist. LEXIS 130502, at *15 (C.D. Cal. July 12, 2021) (also finding that EM's rights were violated by the ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks).

vi.  The U.S. District Court for the Central District of California has also twice held that "the ENTREPRENEUR Mark and EMI's related marks have developed a high degree of distinctiveness and become well-known and recognized as identifying goods and services that originate from EMI." *Entrepreneur Media, Inc. v. Entrepreneurs Opportunities, LLC*, No. 17-cv-01341-JVS-KES, Docket No. 20 (C.D. Cal., Jan. 14, 2018); *Entrepreneur Media, Inc. v. The Innovation Initiative, et al*, No. 17-cv-2261-JVS-KES, Docket No. 23 (C.D. Cal., August 2, 2018) (finding the same); *see also Entrepreneur Media, Inc. v. Darren Casey*, No. 18-cv-01058-JLS-AGR, Docket No. 20 (C.D. Cal., December 20, 2018) (recognizing that EM's marks are protectable and have been used for over forty years); *Entrepreneur Media, Inc. v. John Doe d/b/a/ Entrepreneur Press*, No. 19-cv-01706-JLS-JDE, Docket No. 23 (C.D. Cal., October 21, 2020) (recognizing the same).  These courts also held that EM's rights were violated by, respectively, the ENTREPRENEUR OPPORTUNITIES mark, the ENTREPRENEUR TV mark, the FIT ENTREPRENEUR MAGAZINE mark, and the ENTREPRENEUR PRESS mark.

vii.  The U.S. District Court for the District of Colorado held that "the EMI Marks, and in particular the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become

15

well known, famous, and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection." *Entrepreneur Media, Inc. v. Spencer et al.*, No. 1:17-cv-01637-RBJ, Docket No. 20, at pg. 8 (D. Colo. Dec. 15, 2017) (also finding that EM's rights were violated by the ENTREPRENEUR SUPPORT mark).

viii.   The U.S. District Court for the District of Connecticut has recognized that "the EMI Marks, and in particular the ENTREPRENEUR Mark, have acquired extensive goodwill, developed a high degree of distinctiveness and secondary meaning, and become well known and recognized as identifying goods and services that originate from EMI, such that they are deserving of strong protection." *Entrepreneur Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19 (D. Conn. Aug. 19, 2015) (also finding that EM's rights were violated by the ENTREPRENEUR WEEK mark).

ix.   The U.S. District Court for the District of Maryland has twice recognized the EM Marks as valid, strong, and distinctive. *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al.*, No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *id.*, Docket No. 47 (Apr. 7, 2014) (also finding that EM's rights were violated by the ENTREPRENEURS EDGE mark).

### The Abusive Domain Names

39.   The Abusive Domain Names are located at the following internet addresses: *www.apacentrepreneur.com*, *www.thegulfentrepreneur.com*, and *www.thegulfentrepreneurs.com*. The domain name *thegulfentrepreneurs.com* redirects to the website *thegulfentrepreneur.com*.

40.   As described above, the Abusive Domain Names completely incorporate EM's ENTREPRENEUR® trademark in its entirety, preceded only by the descriptive geographic terms "APAC" and "THEGULF." However, these terms do not meaningfully distinguish the Abusive Domain Names from the ENTREPRENEUR® mark, as they merely identify geographic regions.

16

41.     All of the Abusive Domain Names thus bear an obvious similarity to EM's legitimate domain names and trademarks, and are plain attempts to impersonate EM and exploit domain names containing the ENTREPRENEUR® mark.

42.     Additionally, the Abusive Domain Names purport to offer magazines nearly identical to EM's ENTREPRENEUR® magazine (as shown below).   But these so-called "magazines" are not legitimate and cannot actually be accessed by consumers.   They are instead marketed solely as a way of trading off EM's strong brand recognition and goodwill, and ultimately to lure consumers into accessing the Abusive Domain Names and tricking them into paying Registrant to be featured in one of these fraudulent magazines.

**Entrepreneur Media**



(*www.entrepreneur.com/magazine/archive*)

**APAC Entrepreneur**



(*www.apacentrepreneur.com/resources*)

17

**The Gulf Entrepreneur**



(*www.thegulfentrepreneur.com/magazine*)



(*www.web.archive.org/web/20211206184216/https://thegulfentrepreneur.com/magazine*,

captured on December 6, 2021)

43.     For example, on the APACENTREPRENEUR.com domain name, consumers can view a variety of magazine covers (like those shown above), but they cannot access any of the content underneath these covers—because there is none.  Rather, Registrant lures consumers into providing a variety of personal information (e.g., name, email address, phone number, etc.) as part of the "subscription" process to gain access to the magazine contents and has them establish a password for their "account."  But after providing Registrant with all of this information (which could be very valuable to unscrupulous hackers or other nefarious actors), nothing else happens.  The consumer never receives access to the magazines, because there are no magazines.  Rather,

Registrant lures consumers into its trap with flashy magazine covers that serve only to promote a fake magazine that does not actually exist, as well as trade off EM's ENTREPRENEUR® magazine and EM's strong reputation.

44.    The same scheme also plays out on the THEGULFENTREPRENEUR.com domain name, which is used in largely the same manner to dupe consumers.

45.    Even more problematic:  Registrant seeks to induce unsuspecting consumers to pay to be recognized or featured in these magazines, when in reality, these are not legitimate magazines and Registrant seeks only to steal their money.

46.    Indeed, Registrant has already targeted unsuspecting consumers and induced them to pay Registrant for purported recognition or features in their magazine.

47.    For example, Registrant directly solicited and told a consumer that she would be featured as "one of the top 10 inspiring SG [Singapore] Entrepreneurs [of] 2021" in exchange for a payment to Registrant of $2,500.

48.    After being contacted by Registrant, this consumer reached out to EM to understand why EM requested payment for a magazine feature when she "**never got featured by paying for it**." Of course, EM requested no such thing.  This payment request instead came from Registrant. A copy of the correspondence between EM and this consumer is attached hereto as Exhibit 4.




49.    Thus, the Abusive Domain Names are confusingly similar to the ENTREPRENEUR® trademark and *entrepreneur.com* domain name owned by EM.  Use of the ENTREPRENEUR® trademark in the Abusive Domain Names is likely to cause (and has already caused) confusion or mistake as to whether EM is the source or sponsor of, is affiliated with, or endorses the Abusive Domain Names.

50.    The Abusive Domain Names were registered and used in bad faith in violation of the ACPA.  The Abusive Domain Names divert consumers from EM's legitimate online sites, such as *entrepreneur.com*, by creating a likelihood of confusion as to whether EM is the source or sponsor of, is affiliated with, or endorses the Abusive Domain Names and their websites.  Such intent to create a likelihood of confusion, and the evidence of actual confused consumers which resulted in commercial gain to Registrant, is evidence of bad faith pursuant to 15 U.S.C. § 1125(d)(1)(B)(i)(V).

51.    Further, registration of the Abusive Domain Names is also evidence of bad faith pursuant to 15 U.S.C. § 1125(d)(1)(B)(i)(VIII) because Registrant registered multiple domain names, each of which incorporates the entirety of EM's distinctive, famous, and well-known ENTREPRENEUR® mark.  On information and belief, when registering the Abusive Domain

20

Names, Registrant knew that these domains were identical or confusingly similar to the ENTREPRENEUR® mark and intended to use them in bad faith to profit off this mark by diverting consumers away from EM's legitimate online sites.

52. EM has not authorized use of the ENTREPRENEUR® mark in connection with the Abusive Domain Names.

53. Shortly after becoming aware of the APACENTREPRENEUR.com domain name, EM sent a letter to Registrant via an email address listed on the website. EM advised Registrant of EM's trademark rights and that the registration of the APACENTREPRENEUR.com domain was an infringement of those rights. EM also demanded that Registrant transfer the domain name to EM and cease its infringing use of the ENTREPRENEUR mark.

54. Despite repeated follow-ups, Registrant refused to respond or otherwise cooperate. EM sent additional letters to various email addresses listed on the APACENTREPRENEUR.com website. However, EM did not receive a response to any of its letters almost a year later. An individual named Andrew Williams responded and confirmed that he would not be complying with EM's demands. EM never received a response again.

55. Shortly after becoming aware of the THEGULFENTREPRENEUR.com domain name, EM sent a letter to Registrant via an email address listed on the website. EM advised Registrant of EM's trademark rights and that the registration of the domain THEGULFENTREPRENEUR.com was an infringement of those rights. EM also demanded that Registrant transfer the domain name to EM and cease its infringing use of the ENTREPRENEUR mark. EM received no response to its letter.

56. After further investigation, EM learned that Registrant of both the APACENTREPRENEUR.com and THEGULFENTREPRENEUR.com domain names also registered another infringing domain name: THEGULFENTREPRENEURS.com. This domain name merely redirects visitors to the THEGULFENTREPRENEUR.com website. A reverse Whois search for Registrant, which identifies all the domain names that it owns, is attached as Exhibit 5.

## COUNT I

### Violation of the ACPA – 15 U.S.C. § 1125(d)(2)(A)

57.    EM incorporates by reference the factual allegations set forth above.

58.    The ENTREPRENEUR® trademark is protectable within the meaning of 15 U.S.C. § 1125(d)(1)(A)(ii).

59.    The ENTREPRENEUR® trademark is distinctive, famous, and well-known.

60.    Registrant's Abusive Domain Names has registered, trafficked in, and/or used the Abusive Domain Names, which are identical or confusingly similar to, or dilutive of, EM's trademarks in violation of the ACPA.

61.    Registrant has profited in bad faith from the unauthorized registration and use of the Abusive Domain Names, by, for example, impersonating EM to solicit payments from unsuspecting consumers and the general public by using the confusingly similar Abusive Domain Names in violation of EM's protected rights.

62.    The unauthorized registration and use of the Abusive Domain Names must be enjoined to prevent further irreparable injury to the substantial and valuable goodwill associated with EM's marks, as well as prevent any future harm to unsuspecting members of the public.

### PRAYER FOR RELIEF

WHEREFORE, EM respectfully prays for the following relief:

A.    An injunction ordering the transfer of the Abusive Domain Names to EM pursuant to 15 U.S.C. § 1125(d)(2)(D)(i);

B.    An injunction ordering VeriSign, the registry of the Abusive Domain Names, to change the registrar of record for the domain name to a registrar of EM's selection, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i);

C.    An order pursuant to 15 U.S.C. § 1125(d) finding that, by the acts complained above, EM's valuable and strong trademarks have been infringed;

D.    An order pursuant to 15 U.S.C. § 1117(a) finding that this is an exceptional case and awarding EM its reasonable attorneys' fees;

22

E.      An order pursuant to 15 U.S.C. § 1117(a) awarding EM all of its costs, disbursements, and other expenses incurred due to the unlawful conduct at issue;

F.      An order awarding EM pre-judgment interest; and

G.      An order awarding EM any other relief as the Court deems appropriate.

Dated: October 30, 2025                       Respectfully submitted,

LATHAM & WATKINS LLP

/s/ *Stephen P. Barry*
Stephen P. Barry (Va. Bar No. 81839)
555 Eleventh Street, NW, Suite 1000
Washington, D.C., 20004
202.637.2200 | 202.637.2201 Fax
*stephen.barry@lw.com*

Adam A. Herrera (*pro hac vice* forthcoming)
12670 High Bluff Drive
San Diego, CA 92130
858.523.5400 | 858.523.5450 Fax
*adam.herrera@lw.com*

*Attorneys for Plaintiff Entrepreneur Media LLC*